UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN PEROTTI, #39656-060

        Plaintiff,

v.

MS. MARLBERRY, ET AL.,

        Defendants.

Case No. 05-60172

District Judge John Corbett O'Meara

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Plaintiff John Perotti, a federal prison inmate, has filed a *pro se* civil complaint against a number of Defendants, pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Before the Court is a Motion to Dismiss filed by Defendants Helen Marberry, Deborah Cozza Rhodes, Melody Morris, and Dr. Malatinsky [Doc. #139], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Plaintiff has not filed a response. For the reasons discussed below, I recommend that the Motion [Doc. #139] be GRANTED pursuant to Fed.R.Civ.P. 12(b)(6), and that the complaint be DISMISSED WITH PREJUDICE as to these Defendants.

### I. FACTS

At the time of the events giving rise to this complaint, these Defendants were employed by the Bureau of Prisons ("BOP") at the Federal Detention Center in Milan, Michigan ("FDC Milan"). Plaintiff was housed at FDC Milan from February to May, 2005, as a pretrial detainee. Defendant Marlberry was the Warden; Rhodes was the

Detention Center Administrator; Morris was a secretary and, according to the complaint, "the only notary public at Milan FDC; and Malatinsky was a physician at FDC Milan. *Complaint*, ¶¶ 2-5.

Plaintiff brings First Amendment claims of retaliation and denial of access to the courts against Defendants Rhodes, Morris and Marlberry. As to the retaliation claim, Plaintiff alleges as follows, at ¶ 17 of the complaint:

> "On March 28, 2005, Defendant Rhodes gave Mr. Perotti a direct order <u>not</u> to go to the Milan Law Library. Said order was in retaliation for a grievance he had filed on her and staff. Defendant Marlberry ratified this violation by direct participation, upholding her employer's refusal to allow access to the courts."

Plaintiff also claims that Defendant Morris, a secretary, refused to notarize a document for an appeal to the Ohio appellate court. He claims that as a result, his appeal was dismissed as untimely. *Complaint*, ¶¶ 19-21. He alleges that Defendant Marlberry "ratified this violation."

Plaintiff claims an Eighth Amendment violation against Defendant Dr. Malatinsky, alleging deliberate indifference to his serious medical needs, including Hepatitis B and C, pneumonia and a sinus infection. *Id*. ¶¶ 24-25. He further claims that Defendants Marlberry and Cozza-Rhodes violated his Eighth Amendment rights in that they "systematically denied medical treatment for HBU and HCU, saying one must 'wait until transferred to another prison." *Id*. ¶ 25. In addition, he claims that these actions violated his rights under the Americans with Disabilities Act ("ADA"). *Id*.

In the present motion, Defendants allege that Plaintiff failed to exhaust his administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a), and further argue that in any event, Plaintiff has failed to state a claim on which relief can be granted.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

The United States Supreme Court has altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[1] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

---

[1] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[2] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950 (Internal citations omitted).

### III. DISCUSSION

Defendants argue that Plaintiff has not exhausted his administrative remedies. Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12 (2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock, supra*, 549 U.S. at 921, 127

---

[2] *Twombley* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

S.Ct. at 216. Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id.*; *Grinter v. Knight,* 532 F.3d 567 (6th Cir.2008).

However, in the event that a complaint "fails to state a claim upon which relief can be granted...the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2). Because the Plaintiff's claims against these Defendants are subject to dismissal under Rule 12(b)(6), it is not necessary to decide the exhaustion issue, and I will proceed to a discussion of the merits.

### A.     Retaliation

Plaintiff describes himself as a prolific litigator, with an Associate of Arts degree in Paralegal Science. He states, "Over the years Mr. Perotti has either litigated or been a part of hundreds of prisoner civil rights litigations, as either a grievant, plaintiff, relator or appellant." *Complaint*, ¶¶ 10-11. In ¶ 18, he alleges that Defendant Rhodes' order for him not to go to the law library (at least during working hours) was done "in retaliation for a grievance he had filed on her and staff." He does not indicate when this grievance was filed, and offers no other facts in support of his claim of retaliation.

A critical element of a First Amendment retaliation claim is that a plaintiff's constitutionally protected activity must be causally related to some adverse action. Setting aside the fact that merely restricting, rather than eliminating library access is unlikely to qualify as an "adverse action,"[3] Plaintiff has not plausibly alleged causation between his filing of a grievance and the restriction of his library hours. To the extent that he is relying on the temporal proximity of the two events–and he has not even alleged that one

---

[3] *See Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)(there is no "abstract, freestanding right to a law library...."); *Jones v. Greninger,* 188 F.3d 322, 325-26 (5th Cir.1999)(restricting law library access to five hours per week did not rise to the level of a constitutional violation).

occurred close in time to the other–that would be insufficient. "Conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden,* 89 Fed. Appx. 579, 580 (6th Cir. 2004). Although in some circumstances, close temporal proximity between the protected conduct and adverse action may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close,* 379 F.3d 413, 417-18 (6th Cir.2004) (quoting *DiCarlo v. Potter,* 358 F.3d 408, 422 (6th Cir.2004)), "it would only be sufficient if the evidence was significant enough." *Brandon v. Bergh,* 2010 WL 188731, *1 (W.D. Mich., 2010) (quoting *Muhammad,* 379 F.3d at 417-18).

Plaintiff's allegation of retaliation is not significant enough. It is highly speculative and conclusory, and smacks of the *post hoc ergo propter hoc*[4] fallacy, where retaliatory motive is inferred merely from the sequence of events. However, the "fact that protected speech may precede an adverse [prison] decision alone does not establish causation," *O'Connor v. Chicago Transit Authority*, 985 F.2d 1362, 1370 (7th Cir. 1993), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Smith v. Halford*, 570 F.Supp. 1187, 1194-95 (D.Kan. 1983).

Again, "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Twombley, supra*, 127 S.Ct. at 1964-65. Plaintiff's retaliation claim fails the *Twombley/Iqbal* test, and must be dismissed.

### B.   Access to the Courts

Plaintiff claims that Defendant Morris's refusal to notarize his appellate documents

---

[4] "After which, therefore because of which."

resulted in the dismissal of his Notice of Appeal in the Ohio Court of Appeals in a civil case entitled *Perotti v. Lakewood Police Dept.* He does not set forth the basis of his claims in the Ohio case.

It is true that prison inmates have a constitutionally protected right of access to the courts, grounded in the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1988)("It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances"). However, "to state a claim for denial of access to the courts, an inmate must show actual injury to existing or contemplated litigation of *non-frivolous claims* which challenge his sentence or conditions of confinement." *Thompson v. Million*, 221 Fed.Appx. 1336 (Table), 2000 WL 876556, *1 (6th Cir.2000), citing *Lewis v. Casey*, 518 U.S. 343, 354-55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)(emphasis added); *see also Hadix v. Johnson,* 182 F.3d 400, 405 (6th Cir.1999) (explaining the "actual injury" standard of *Lewis* includes requirement that action be non-frivolous).

Moreover, the only types of litigation to which the First Amendment right of access claim attaches are direct or collateral appeals of criminal convictions, habeas corpus cases, and civil rights actions under 42 U.S.C. § 1983. *See Lewis v. Casey, supra*, 518 U.S. at 354-355; *Thaddeus-X v. Blatter,* 175 F.3d 378, 391(6th Cir. 1999)("a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only").

Plaintiff's right of access claim fails for two reasons. First, he has not plausibly shown that the denial of the services of a notary caused his Ohio appeal to be dismissed. Rule 3 of the Ohio Appellate Rules, which governs the filing of a Notice of Appeal,

-7-

provides as follows:

> "The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof apealed [*sic*] from; and shall name the court to which the appeal is taken. The title of the case shall be the same as in the trial court with the designation of the appellant added, as appropriate. Form 1 in the Appendix of Forms is a suggested form of a notice of appeal."  App. R. Rule 3(D).

Nowhere is there a requirement that a Notice of Appeal be notarized. In addition, the Rule provides that "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal...." Plaintiff's Notice of Appeal was dismissed because it was untimely, not because it was not notarized. Thus, Plaintiff has not shown a causal relationship between Morris's failure to provide notary services and the dismissal of his appeal.

Secondly, beyond giving a case name, Plaintiff has not alleged anything about the basis for the Ohio case, or whether it was one of the classes of cases to which a First Amendment right of access claim applies. In a right of access claim, the plaintiff must describe the underlying case, and must set forth sufficient facts showing that it is non-frivolous. In *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court stated:

> "*[O]ur cases rest on the recognition that the right [of access to the courts] is ancillary to the underlying claim*, without which a plaintiff cannot have suffered injury by being shut out of court. We indicated as much in our most recent case on denial of access, *Lewis v. Casey, supra,* where we noted that even in forward-looking prisoner class actions to remove roadblocks to future litigation, the named plaintiff must identify a "nonfrivolous," "arguable" underlying claim, *id.,* at 353, and n. 3, 116 S.Ct. 2174, and we have been given no reason to treat backward-looking access claims any differently in this respect. *It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.*" (Emphasis added).

*Christopher* further held that "[l]ike any other element of an access claim, the

underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id*. at 416.

In failing to set forth any relevant information about the Ohio case, Plaintiff runs afoul of *Iqbal* and *Twombley*, which require that a complaint contain factual allegations, as opposed to legal conclusions, and that the facts pled set forth a "plausible" claim for relief.

### C. Deliberate Indifference

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151,

154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

In other words, this Court is not entitled to second-guess medical decisions as a matter of constitutional law, or adjudicate state law claims for medical malpractice in the context of a § 1983 or *Bivens* action. *Westlake, supra*; *Sanderfer v. Nichols, supra*. *See also Farmer v. Brennan, supra*, 114 S.Ct. at 1982-83 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). Under the constitutional standard, the test is not whether the Plaintiff received optimal care, but whether the medical providers were deliberately indifferent.

Plaintiff alleges that during the three months he was at FDC Milan (February to May, 2005), he was denied liver function tests for Hepatitis B and C, and he was denied antibiotics for a respiratory or sinus infection until March 21, 2005. As to the latter condition, it appears that Plaintiff suffered from Otitis Media, not pneumonia or a sinus infection. *Complaint*, Exhibit J (grievance response). In any event, Plaintiff concedes that he in fact received antibiotics in March.

As to Plaintiff's claim of deliberate indifference to Hepatitis, Defendants have submitted, as Exhibit F to their Motion, the BOP Policy concerning treatment for Hepatitis C. The Policy states, at pp. 3-4, that a contraindication for antiviral therapy occurs where the inmate will not be at the institution long enough to complete the therapy (six months to a year):

> "Inmates who are candidates for hepatitis C treatment, but whose anticipated length of stay will not allow sufficient time to complete therapy, should ordinarily not be started on antiviral therapy unless continuation of treatment within the community is deemed likely. *This includes inmates housed in short-term BOP detention facilities (including pre-trial and non-sentenced federal detainees), or inmates whose anticipated release date will*

-10-

*not allow sufficient time to complete treatment.*" (Emphasis added).

Plaintiff was at FDC Milan for only three months, not long enough to receive effective treatment.

Defendants also note, at p. 17 of this Motion, that a grievance response dated April 11, 2005, signed by Defendant Marlberry and attached to the *Complaint* as Exhibit J, indicates that Plaintiff in fact had tests for liver function, which were normal:

> "Our records reveal all requested medical copies were provided to your U.S. Probation Officer on March 9, 2005, and copies will be provided to you. Regarding your concern of not being evaluated or treated for an alleged infection or for your Hepatitis C condition, your medical records reveal you were evaluated on march 10, 2005, by the Clinical Director in the Chronic Care Clinic. You were informed of your normal liver evaluation, negative lab results and told you did not require any treatment for your Hepatitis C condition at that time. You will be followed as required. On March 21, 2005, you were seen by the Medical Provider and received treatment including antibiotics for Otitis Media. Any changes in your condition will be evaluated for further treatment plan modification. If you have additional medical issues, you need to sign up for sick call."

The Plaintiff has not responded to the Defendants' argument that he in fact received medical evaluation for Hepatitis C, and indeed, he has not responded to this Motion. It is therefore uncontested that Plaintiff was examined and received treatment for Otitis Media, and was evaluated for Hepatitis C, with a medical determination that short-term treatment was not indicated. While Plaintiff may disagree with Dr. Malatinsky's and the BOP's medical opinions, that is insufficient to state a claim of deliberate indifference. *Estelle, supra*; *Westlake, supra*.

For the same reasons, Plaintiff's conclusory allegation that he was denied rights under the ADA must fail. A claim for relief "requires more than labels and conclusions," *Twombley, supra*.

### IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion to Dismiss [Doc. #139]

-11-

be GRANTED pursuant to Fed.R.Civ.P. 12(b)(6), and that Defendants Helen Marberry, Deborah Cozza Rhodes, Melody Morris, and Dr. Malatinsky be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: August 14, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 14, 2012.

| | |
|---|---|
| John Perotti, #39656-060<br>Canaan U.S. Penitentiary<br>Inmate Mail/Parcels<br>PO Box 300<br>Waymart, PA 18472-0800 | s/Johnetta M. Curry-Williams<br>Case Manager |